**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRIAN WATSON,<br><br>       Plaintiff,<br>   v.<br><br>D.C. WATER & SEWER AUTHORITY, *et al.*,<br><br>       Defendants. | Civil Action No. 16-2033 (CKK) |

**MEMORANDUM OPINION**
(November 15, 2018)

Plaintiff Brian Watson was not hired by Defendant, the District of Columbia Water and Sewer Authority ("DC Water"), for an open Water Sewer Services 06 position. Plaintiff claims that he was not hired for this position because Defendant discriminated against him due to his African-American race and because Defendant retaliated against him for engaging in protected activity. Plaintiff brings this lawsuit under Title VII of the Civil Rights Act of 1964, Section 1981, and the District of Columbia Human Rights Act ("DCHRA"). 42 U.S.C. § 2000e *et seq.* (Title VII); 42 U.S.C. § 1981 *et seq.* (Section 1981); D.C. Code §§ 2-1401.01-1403.17 (DCHRA). Defendant has moved for summary judgment, and Plaintiff has opposed the motion.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall GRANT Defendant's [33] Motion for Summary Judgment. Plaintiff

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits:
- Def.'s Mot. for Summary Judgment, ECF No. 33 ("Def.'s Mot.");
- Pl.'s Mem. in Opp'n to Def.'s Mot. for Summary Judgment, ECF No. 34 ("Pl.'s Opp'n"); and
- Def.'s Reply in Support of Mot. for Summary Judgment, ECF No. 35 ("Def.'s Reply").

failed to present evidence showing that Defendant's legitimate, lawful reason for not hiring Plaintiff was actually pretext for racial discrimination or retaliation. As Plaintiff did not create a genuine dispute of material fact, Defendant is entitled to judgment as a matter of law.

## I. BACKGROUND

Plaintiff, an African-American man, began working at the DC Department of Public Works, a predecessor to DC Water, in 1985. Pl.'s Opp'n, ECF No. 34, Ex. A, 7. While working at DC Water, Plaintiff had exemplary performance evaluations and attendance, resulting in salary increases and an eventual promotion to the position of Plumbing Worker, reading and relocating water meters. *Id.* at Ex. A, 2, 6; *Id.* at Ex. B, 13. After working at DC Water for approximately fifteen years, in 2000, a new Caucasian supervisor was appointed to oversee Plaintiff. *Id.* at Ex. B, 11, 12, 25. Plaintiff contends that he complained to the then-Acting Director of the Department of Water Measurement and Billing that he was being harassed and that his supervisor wanted to terminate him. Pl.'s Opp'n, ECF No. 34, 3. Plaintiff also sought help from his union to transfer, but his union was unable to help him. *Id.* at Ex. B, 25.

In response to the alleged harassment Plaintiff faced from his new supervisor, Plaintiff resigned on January 9, 2002. *Id.* at Ex. B, 38. However, the next day, Plaintiff changed his mind and returned to work asking to rescind his resignation. *Id.* at Ex. B, 8. Defendant did not allow Plaintiff to rescind his resignation, claiming that it had already processed the resignation. *Id.* at Ex. B, 8-9. Plaintiff contends that he knows of at least one other employee that was allowed to rescind his resignation without issue. *Id.* Plaintiff's Separation Personnel Action Report indicated

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

that Plaintiff had resigned, but it did not indicate whether or not he was eligible for rehire. *Id.* at Ex. B, 37.

Following his resignation, Plaintiff complained of his unfair treatment to various DC Water employees and board members and to District of Columbia Councilmembers. In these complaints, Plaintiff requested help in getting his old job back, but he did not ask to be hired for any specific, new positions. *Id.* at Ex. B, 8-9, 13-15, 17-18, 26-27, 29, 30-36. In 2013, Plaintiff joined a class action against Defendant alleging racial discrimination. *Id.* at Ex. A, 44-51. The class action settled later that year, and, in 2015, Plaintiff received a settlement as a result of his participation in the class action. Def.'s Mot., ECF No. 33, Ex. 1, 23.

On February 6, 2015, Plaintiff wrote a letter to George Hawkins, the General Manager of DC Water, asking for help being reinstated to his old job. Pl.'s Opp'n, ECF No. 34, Ex. B, 17. And, on May 28, 2015, Plaintiff's District of Columbia Councilmember wrote a similar appeal to Mr. Hawkins on Plaintiff's behalf. *Id.* at Ex. B, 19. Mr. Hawkins replied to the councilmember, writing that "we will be happy to look into this employment prospect." *Id.* at Ex. B, 20.

With this assurance from Mr. Hawkins, Plaintiff applied for an entry-level Water Services worker vacancy at the Grade 6 level in June 2015. *Id.* at Ex. A, 37-38. The position required a high school degree and one year of relevant experience. *Id.* at Ex. A, 30. There were four open positions.

Defendant's human resources department began screening qualified applicants for the job on July 2, 2015. *Id.* On July 29, 2015, a recruiter, Albert Williams, emailed Plaintiff's application and resume to the hiring manager, Curtis Brown. For at least two months, Plaintiff's was the only application that Mr. Brown received. *Id.* at Ex. A, 63-64. However, in October 2015, a different recruiter, Giselle Richardson, forwarded the applications for an additional

twelve qualified applicants to Mr. Brown. Plaintiff's name was not on the new list. *Id.* at Ex. A, 60-62. On October 28, 2015, Mr. Brown interviewed nine candidates from that list and recommended five of them for the position. *Id.* at Ex. A, 65-68. Ultimately, DC Water offered the job to four of the candidates and one served as an alternate. Def.'s Mot., ECF No. 33, Declaration of Giselle Richardson, ¶ 13.

After extending the offers, one of the four candidates failed his background check and the alternative candidate declined the offer. *Id.* at Declaration of Giselle Richardson, ¶ 14. With one position remaining open, in January 2016, Defendant reposted the job opening. *Id.* at Declaration of Giselle Richardson, ¶ 15. In March 2016, Ms. Richardson sent Mr. Brown a list of five qualified candidates for the open Water Services worker position, but, again, Plaintiff's name was not on the list. Pl.'s Opp'n, ECF No. 34, Ex. A, 33. Mr. Brown interviewed and recommended three candidates, one of whom ultimately was offered and accepted the job. *Id.* at Ex. A, 35-36.

In June 2016, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged that Defendant had discriminated against him by not hiring him for the Water Services worker vacancy on account of his race and in retaliation for his past complaints. *Id.* at Ex. B, 2-6. The EEOC was unable to determine whether or not Defendant had violated any laws in its treatment of Plaintiff, and on July 21, 2016, Plaintiff received a notice of his right to sue. *Id.* at Ex. B, 7. Plaintiff timely filed suit in this Court on October 12, 2016. *See generally* Compl., ECF No. 1. Plaintiff initiated this suit pro se, but as of September 29, 2017, Plaintiff has been represented by counsel. *See generally* Notice of Appearance, ECF No. 24.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor.  *Liberty*

*Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). Be that as it may, the plaintiff is not relieved of his burden to support his allegations with competent evidence. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009). As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, then at the summary judgment stage he bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . . trial"—simply by way of offering conclusory allegations, speculation, and argument. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## III. RACIAL DISCRIMINATION CLAIMS

**A. Statutory Background**

Plaintiff brings his claims for racial discrimination under three statutes: Title VII of the Civil

Rights Act, Section 1981, and the DCHRA. *See generally* Sec. Am. Compl., ECF No. 18. All

three statutes prohibit racial discrimination. Title VII provides in relevant part that it is unlawful

for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section

1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same

right … to make an enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Under this provision, an employer's actions may not be based on the consideration of

impermissible factors such as race. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-76

(2006). And, finally, the DCHRA prohibits employers from discharging or otherwise

discriminating against an individual with respect to the terms and conditions of employment due

to race. *See* D.C. Code §§ 2-1401.01-1403.17. Because all three statutes are analyzed using the

same standards, the Court will address together Plaintiff's claims under Title VII, Section 1891,

and the DCHRA. *Kidane v. Nw. Airlines, Inc.*, 41 F. Supp. 2d 12, 17 (D.D.C. 1999) ("[T]he same

standards apply in evaluating claims of discrimination and retaliation under Title VII and §

1981"); *Deckwith v. Career Blazers Learning Ctr. Of Washington, D.C.*, 946 F. Supp. 1035, 1048

(D.D.C. 1996) ("The legal standards applicable to race discrimination are the same under the

DCHRA and § 1981."); *Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010) (explaining

that claims under Title VII and the DCHRA are analogous).

From Plaintiff's Second Amended Complaint, it appears that Plaintiff argues that he faced two adverse employment actions on account of his race: Defendant's refusal "to consider or hire him for positions for which he qualified" and Defendant's placement of "a designation in his personnel records that he was not eligible for rehire following his complaints of discrimination during and after his employment." Sec. Am. Compl., ECF No. 18, 4-6. But, in his opposition to Defendant's motion, Plaintiff refined his claim, alleging only that "Defendant DC Water discriminated against him based on his race … when it refused to consider him for an entry-level Water Services worker position for which he qualified." Pl.'s Opp'n, ECF No. 34, 1. Plaintiff's decision to refine his racial discrimination claim to only one adverse action, Defendant's refusal to consider Plaintiff for the Water Services worker position, is appropriate as that is the only action that Defendant committed within the claims period for the three statutes.

Under Title VII, claimants are required to bring an EEOC complaint within 300 days of the adverse action. *See* 42 U.S.C. § 2000e-5(e)(1). Mr. Watson filed his EEOC charge on June 23, 2016, so any claims occurring more than 300 days before that date, or before August 25, 2015, are time-barred. The only action that Defendant committed involving Plaintiff after August 25, 2015, is the rejection of Plaintiff from the Water Services worker position. And, for claims brought under Section 1981, a four-year statute of limitations applies. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382 (2004). Mr. Watson filed his complaint in this Court on October 12, 2016, so all claims prior to October 12, 2012, are time-barred. Again, the only adverse action committed by Defendant against Plaintiff within this time-frame is Plaintiff's rejection from the Water Services worker position. Finally, the DCHRA has a one-year statute of limitations starting from the date that the plaintiff discovered or reasonably should have discovered the discriminatory act. *See* D.C. Code § 2-1403.16. As Plaintiff brought his complaint on October

12, 2016, all claims that Plaintiff discovered or reasonably should have discovered prior to October 12, 2015, are barred. And, again, the only adverse action occurring within this time-frame is Defendant's rejection of Plaintiff from the Water Services worker position.

Accordingly, the only question before the Court pertaining to Plaintiff's racial discrimination claim is whether or not Defendant violated Title VII of the Civil Rights Act, Section 1981, or the DCHRA when it refused to hire Plaintiff for the Water Services worker position.[2]

As mentioned above, the Court uses the same standard for assessing racial discrimination claims under Title VII, Section 1981, and the DCHRA. Under this well-established framework, a plaintiff must demonstrate by a preponderance of the evidence that the actions taken by the Defendant were "more likely than not based on the consideration of impermissible factors" such as race. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation marks and citation omitted). In so doing, "the plaintiff may prove his claim with direct evidence, and absent direct evidence, he may indirectly prove discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Brady v. Livingood*, 456 F. Supp. 2d 1, 6 (D.D.C. 2006), *aff'd, Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008) (internal quotation marks and citation omitted).

---

[2] In its Motion, Defendant raised this statute of limitations argument, contending that its failure to hire Plaintiff for the Water Services worker position is Plaintiff's only actionable claim. Def.'s Mot., ECF No. 33, 3-6. Plaintiff did not respond to this argument in its Opposition. *See generally* Pl.'s Opp'n, ECF No. 34. Accordingly, the Court can treat this argument as conceded by Plaintiff. *Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ("it is well understood … that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by defendant, a court may treat those arguments that plaintiff failed to address as conceded.").

Direct evidence of discrimination is sufficient alone to defeat a defendant's motion for summary judgment. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (explaining that the *McDonnell Douglas* test is not used where the plaintiff presents direct evidence of discrimination); *see also Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 576-77 (D.C. Cir. 2013). Here, however, Plaintiff proffers no direct evidence that Defendant discriminated against him on the basis of race.

In the absence of direct evidence of discrimination based on race, the *McDonnell Douglas* framework applies. Pursuant to that framework, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. For a claim alleging racial discrimination with respect to employment, a plaintiff makes out a prima facie case by showing (1) that he is a member of a protected group; (2) that he suffered an adverse employment action; and (3) that the adverse action gives rise to an inference of discrimination. *Royall v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008). Once a plaintiff makes out a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [adverse action].'" *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). If the defendant is successful, then the plaintiff must prove by a preponderance of the evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." *Id.*

In *Brady v. Office of Sergeant at Arms*, the D.C. Circuit simplified the analysis for racial discrimination suits. 520 F.3d at 494. Under *Brady*, once an employer has proffered a legitimate, nondiscriminatory reason, the *McDonnell Douglas* burden-shifting framework disappears, and the court must simply determine whether the plaintiff has put forward enough evidence to defeat the defendant's proffer of a legitimate, non-discriminatory reason and support a finding of

discrimination. See *id.* ("[W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not* —decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." (emphasis in original)). Ultimately, "[f]or purposes of summary judgment, the operative question … is whether 'the employee produced sufficient evidence for a reasonable jury to find that ... the employer intentionally discriminated against the employee on the basis of race.'" *Ayissi–Etoh*, 712 F.3d at 576 (quoting *Brady*, 520 F.3d at 494). In other words, once a defendant has stated a legitimate, non-discriminatory reason for the adverse employment action, the question "becomes whether, based on the totality of the parties' evidence, a reasonable jury could determine that the defendant's proffered explanation was pretext for discrimination." *Kilby-Robb v. Duncan*, 77 F. Supp. 3d 164, 169 (D.D.C. 2015) (citing *Brady*, 520 F.3d at 494-95).

## B.  Analysis

### 1.  Defendant's Legitimate, Non-Discriminatory Reason

Defendant argues in its motion for summary judgment that it had a legitimate, nondiscriminatory reason for not hiring Plaintiff for the Water Services worker position—it hired other qualified individuals with recent, relevant work experience. Defendant's recruiter selected qualified candidates whose applications showed recent, relevant work experience from the pool of applicants. The recruiter sent those qualified candidates to the hiring manager, who interviewed some of the candidates and made offers to those who expressed an understanding of the position. Def.'s Mot., ECF No. 33, Declaration of Curtis Brown, § 12-15. "Selecting a pool of qualified candidates based upon their written credential and then making a final selection based upon personal interviews is an obviously reasonable method of hiring a professional

employee." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183-84 (D.C. Cir. 1996).

According to Defendant, Plaintiff was not refused the job because of his race, but, instead,

because other, qualified candidates were given the job.

Generally, DC Water applicants are screened by the human resources department

recruiters based on the job description, skills, and qualifications for the position. Def.'s Mot.,

ECF No. 33, Ex. 3, Deposition of Albert Williams, 8.[3] Those applicants who meet the minimum

qualifications are then sent to the hiring manager who selects candidates to interview. *Id.* at Ex.

3, Deposition of Albert Williams, 8-9. But, there are exceptions to this general process. In

situations where there are a large number of applicants, the recruiters will not send every

qualified applicant to the hiring manager for review because to do so would be overly

burdensome. *Id.* at Declaration of Giselle Richardson, ¶¶ 10-11.

In this case, there were over 550 applicants for the Water Services worker position, many

of whom met the minimum qualifications. *Id.* at Declaration of Giselle Richardson, ¶¶ 8-9. Due

to the high number of qualified applicants for this position, neither the recruiters nor the hiring

manager had sufficient time to screen and interview all qualified applicants. *Id.* at Declaration of

Giselle Richardson, ¶ 11. Accordingly, only some of the many qualified applicants were

screened and forwarded to the hiring manager. *Id.*

On July 29, 2015, the former DC Water Manager of Recruitment, Albert Williams, sent

Plaintiff's application and resume to the hiring manager, Mr. Brown. *Id.* at Ex. 3, Deposition of

Albert Williams, 13; *Id.* at Declaration of Curtis Brown, ¶ 10, Ex. C. As it was rare to receive

only one candidate, Mr. Brown emailed Mr. Williams asking if there were more applicants for

---

[3] Mr. Williams's name was misstated in his deposition transcript as "Alfred." Def.'s Mot., ECF No. 33, Statement of Material Facts As To Which There Is No Genuine Dispute, ¶ 28 n.3. The Court has corrected this mistake.

the position. *Id.* at Declaration of Curtis Brown, ¶ 11 and Ex. C. Mr. Williams never responded, and when another recruiter, Giselle Richardson, sent Mr. Brown the next round of twelve qualified applicants, Plaintiff was not included. *Id.* at Declaration of Giselle Richardson, ¶ 12. Ms. Richardson was not aware that Mr. Williams had previously shared Plaintiff's application with Mr. Brown. *Id.* at Declaration of Giselle Richardson, ¶ 18. Based on this new list, supplied by Ms. Richardson, Mr. Brown interviewed nine qualified candidates with recent, relevant experience. *Id.* at Declaration of Curtis Brown, ¶ 14. Ultimately the top four candidates were recommended for hire, with one alternate. *Id.* at Declaration of Curtis Brown, ¶ 13. One of the recommended candidates failed the background test and the alternate declined the position. Accordingly, there remained one open position. *Id.* at Declaration of Curtis Brown, ¶ 15.

Because there was an open position, in January 2016, Ms. Richardson reposted the position and began screening additional applicants. *Id.* at Declaration of Giselle Richardson, ¶ 15. On January 5, 2016, Ms. Richardson sent Plaintiff an email informing him that Defendant had received numerous qualified applicants for the position and that he was no longer being considered. *Id.* at Declaration of Giselle Richardson, ¶ 16, Ex. B. And, on March 2, 2016, Ms. Richardson sent Mr. Brown a list of five qualified candidates for the open position. *Id.* at Declaration of Giselle Richardson, ¶ 17. Mr. Brown interviewed three of those candidates who were qualified and had recent, relevant work experience and offered one candidate the position. *Id.* at Declaration of Curtis Brown, ¶¶ 19-20.

### 2. **Plaintiff's Evidence of Pretext**

Based on this chain of events, Defendant argues that it did not hire Plaintiff because it instead chose to hire four other qualified candidates with recent, relevant work experience. Because Defendant presented a legitimate, non-discriminatory reason for Plaintiff's non-

selection, the Court proceeds to considering the ultimate question of "discrimination *vel non*"—whether Plaintiff adduced sufficient evidence for a reasonable jury to conclude that Defendant's proffered reason is pretextual and that its real motivation for not hiring Plaintiff was discrimination based on race. *Reeves*, 530 U.S. at 142-43.

Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993) ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination.")); *see also Aka*, 156 F.3d at 1290 ("[A] plaintiff's discrediting of an employer's stated reason for its employment decision is entitled to considerable weight."). A plaintiff can also attempt to "avoid summary judgment by presenting other evidence, direct or circumstantial, that permits an inference of discrimination," such as "discriminatory statements by the employer," "other attitudes suggesting the decision maker harbors discriminatory animus," or other "data" concerning the plaintiff's protected class. *Holcomb v. Powell*, 433 F.3d 889, 899 (D.C. Cir. 2006).

Plaintiff presents three arguments for why Defendant's stated reason for not hiring him is pretextual. First, Plaintiff argues that he met the basic qualifications for the position. Second, Plaintiff contends that Defendant deviated from its own hiring practices in not selecting Plaintiff. Third, Plaintiff claims that Defendant's justification for not hiring him is beyond credence. The

Court concludes that none Plaintiff's arguments are sufficient to create an inference of pretext and withstand summary judgment.

### a. Plaintiff's Qualifications

First, Plaintiff argues that Defendant's legitimate, non-discriminatory reason for not interviewing or hiring him is pretextual because he met the basic qualifications for the position. Pl.'s Opp'n, ECF No. 34, 12. But, it is not enough that Plaintiff was qualified for the job. In order to show that he should have been hired over those who were hired, Plaintiff "must show that []he is *significantly* better qualified for the job than [the applicant] ultimately chosen." *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 25 (D.C. Cir. 2013) (emphasis in original) (internal quotation marks and citations omitted). And Plaintiff fails to make such a showing.

The Water Services worker position for which Plaintiff applied required only that the applicant have a high school diploma and one year of relevant work experience. Plaintiff had his GED and had worked for DC Water for over a decade before resigning in 2002. Accordingly, Plaintiff met the minimum qualifications for the position. But, each of the candidates that Defendant interviewed and later hired were also qualified, and arguably better qualified than Plaintiff.

The primary duty of the Water Services worker position for which Plaintiff applied is making repairs in support of the operation and maintenance of the water supply system. Def.'s Mot., ECF No. 33, Declaration of Curtis Brown, ¶ 9, Ex. B. Supporting the operation and maintenance of the water supply system may require workers to engage in preventative maintenance, to repair and replace mains and service lines, to assist in the operation of valves and hydrants during pressure tests, to clear and restore work sites, to assist in traffic control around work sites, and to maintain the equipment used on the job. *Id.*

The nine candidates that were interviewed in October 2015 were all qualified and had recent, relevant work experience. *Id.* at Declaration of Curtis Brown, ¶ 14. At the time he was interviewed, Mr. Darby was working as a plumber measuring, cutting, threading, and mounting pipes; Mr. Dickens was working for DC Water as a laborer operating hydrants; Mr. Gaston was working as a Utility System Operator for DC Water monitoring water system pressures; Mr. Hughes had worked for DC Water until 2010 installing and replacing water mains and servicing lines to homes; Mr. Jackson had worked as a plumber until 2014; Mr. Nixon was working as a maintenance worker repairing and inspecting hydrants and assisting with the repair of broken lines and services; Mr. Owens was working as a traffic supervisor and laborer installing electrical pipes and had recent experience working on water mains; Mr. Stevens was working as a utility construction worker assisting with equipment maintenance and valve inspections; and Mr. Williams had worked until 2014 as a laborer for a company that contracted with DC Water. *Id.* at Declaration of Curtis Brown, Exs. E-M.

The three applicants who were interviewed for the position in March 2016 were similarly qualified with recent, relevant work experience. *Id.* at Declaration of Curtis Brown, ¶ 19. Mr. Barr had worked until 2013 as a plumber maintaining plumbing systems and installing valves and other equipment; Mr. Griffin had worked as a drain cleaning technician until 2011 laying water pipe and assisting with drain clearance; and Mr. Tanner was working as a construction laborer with experience digging ditches, backfilling excavations, placing traffic signs in work areas, and cutting pipes. *Id.* at Declaration of Curtis Brown, Exs. N-P.

Compared with the candidates who received interviews, it is not apparent that Plaintiff's work experience was as relevant or as recent. At the time he applied for the Water Services Worker position in 2015, Plaintiff had not worked for DC Water for approximately thirteen

years. *Id.* at Ex. 1, Deposition of Brian Watson, 27. When Plaintiff was hired by DC Water in 1985, he was hired as a laborer in charge of relocating water meters from inside houses to street curbs. *Id.* at Ex. 1, Deposition of Brian Watson, 5. After approximately two years as a laborer, Plaintiff moved to a position as a plumbing worker where he visited various residential and commercial addresses, read water meters, processed the numbers and sent out water bills. *Id.* at Ex.1, Deposition of Brian Watson, 5-6. While working with DC Water, Plaintiff only very rarely assisted in the operation of valves and hydrants, conducted disinfection tests, worked with main and service activations, or participated in flow tests—all tasks relevant to the Water Services worker position. *Id.* at Deposition of Brian Watson, 28-29. And, outside of his work experience with DC Water, which was approximately thirteen years old at the time Plaintiff applied, Plaintiff had no relevant water services, construction, or plumbing experience. *Id.* at Deposition of Brian Watson, 30.

Based both on the qualifications of the twelve applicants who were interviewed for the position and on Plaintiff's qualifications, the Court concludes that Plaintiff was, at best, similarly qualified to the applicants who were granted an interview. "In order to justify an inference of discrimination, the qualifications gap [between the selected applicants and the plaintiff] must be great enough to be inherently indicative of discrimination." *Holcomb*, 433 F.3d at 897. Accordingly, where the candidates' qualifications are relatively similar, as is true here, a reasonable jury would not ordinarily infer discrimination from Plaintiff's non-selection. Instead, a reasonable jury would "assume that the employer is more capable of assessing the significance of small differences in the qualifications of candidates, or that the employer simply made a judgment call." *Aka*, 156 F.3d at 1294. Here, the Court concludes that an inference of discrimination is not warranted due to the fact that Plaintiff was not significantly better qualified

than those applicants who were selected for an interview. *See Bray v. Georgetown Univ.*, 917 F. Supp. 55, 60 (D.D.C. 1996) ("Nothing … requires an employer to interview all qualified applicants who submit resumes in response to an advertised vacancy."). Plaintiff's qualification for the position does not provide evidence that Defendant's legitimate, non-discriminatory reason for not hiring Plaintiff was pretextual.

### b. Defendant's Ordinary Hiring Practices

Second, Plaintiff argues that by not interviewing and hiring him, Defendant failed to follow its own hiring practices, leading to an inference that Defendant's legitimate, non-discriminatory reason is pretextual. Pl.'s Opp'n, ECF No. 34, 12-13. Plaintiff argues that Defendant deviated from its hiring policy by: not advancing his application to the hiring manager, not reviewing all applications, and excluding him even though he had priority in the review process as he had previously worked for DC Water. When an organization deviates from its typical hiring process without explanation, the deviation "can justify an inference of discriminatory motive." *Lathram v. Snow*, 336 F.3d 1085, 1093 (D.C. Cir. 2003). But, here, any deviation from the typical hiring process has been explained by Defendant.

First, Plaintiff faults Defendant for not forwarding his applicant to the hiring manager, Mr. Brown, even though Plaintiff was qualified for the position. As an initial note, Plaintiff's application was forwarded to Mr. Brown by recruiter Mr. Williams. But, Plaintiff's application was not included in the list of twelve qualified applicants that another recruiter, Ms. Richardson, sent to Mr. Brown in October 2015. And, it was again not included in the list of another five qualified candidates which Ms. Richardson sent to Mr. Brown in March 2016. Plaintiff argues that, because he met the minimum qualifications, Ms. Richardson was required to forward his

application to Mr. Brown. According to Plaintiff, only Mr. Brown, the hiring manager, had the authority to choose among qualified candidates to narrow the interview list.

In support of his argument, Plaintiff cites to the deposition of the manager of recruitment, Mr. Williams. According to Mr. Williams, after the applicants are screened by the recruiters, "[t]hose candidates that meet that baseline criteria would be passed on to the hiring manager for his or her review. He or she would then select those candidates that he or she wished to interview." Pl.'s Opp'n, ECF No. 34, Ex. E, Deposition of Albert Williams, 18-19. Plaintiff understands Mr. Williams's statement to be describing a policy that all qualified candidates be sent to the hiring manager. According to Plaintiff, because he was qualified, Defendant violated its own policy by excluding him from the October 2015 and the March 2016 qualified applicants lists sent to Mr. Brown.

But, Plaintiff ignores the fact that, while it may be Defendant's general practice to forward all qualified applicants to the hiring manager, that general practice has caveats. According to the declaration of Giselle Richardson, Defendant's talent acquisition specialist, when "DC Water receives hundreds of applications for a position, a recruiter will not send every qualified candidate to the hiring manager for review, because to do so would be overly burdensome." Def.'s Mot., ECF No. 33, Declaration of Giselle Richardson, ¶ 10. DC Water received 552 applications for the Water Services worker position, and many of those applicants met the minimum qualifications. *Id.* at Declaration of Giselle Richardson, ¶¶ 8-9. Plaintiff presents no evidence that it was Defendant's policy to send all qualified applicants to the hiring manager when the qualified applicants numbered in the hundreds. And, Defendant has presented evidence that it was, in fact, not its policy to send all qualified applicants to the hiring manager when it would be overly burdensome to do so. *Id.* at Declaration of Giselle Richardson, ¶¶ 10-11.

Accordingly, Ms. Richardson's failure to send Plaintiff's application to Mr. Brown does not support an inference of pretext.

Second, Plaintiff argues that Defendant deviated from its typical hiring process by not reviewing all applications. According to Plaintiff, it is Defendant's hiring policy to "ensure that all current qualified employees and individuals who apply for a job opening receive[] consideration." Pl.'s Mot., ECF No. 34, Ex. A, 14. But, having Plaintiff's application "receive[] consideration" does not equate to being offered a job, or even an interview. Moreover, the hiring policy does not state that all qualified employees must receive consideration from the hiring manager. And, Plaintiff presents no evidence that his application did not receive consideration from at least someone in the hiring process. In fact, it appears that Plaintiff's application did receive consideration when Mr. Williams forwarded his application to Mr. Brown. Accordingly, Plaintiff presents no evidence that Defendant violated its hiring process by failing to consider his application. Again, this argument does not support an inference of pretext.

Finally, Plaintiff argues that Defendant deviated from its hiring practices by excluding him from the qualified applicants lists even though he had priority in the hiring process. Plaintiff cites to the deposition of Andre Clay, a member of Defendant's human resources team, to support his claim that he had priority in the hiring process. But, Mr. Clay testified that if a person is "terminated for resigning, that person would be then given an eligibility based upon their actual criteria … meaning that … basically it's not an impact." *Id.* at Ex. D, Deposition of Andre Clay, 15. Mr. Clay's statements do no support Plaintiff's assertion that he should have been given priority in the hiring process after resigning. Plaintiff also cites to the deposition of Mr. Williams for support. Mr. Williams did testify that recruiters "would also look at employees who were eligible for rehire, but were no longer with the organization … they sort of had a secondary

priority in the process." *Id.* at Ex. E, Deposition of Albert Williams, 22. But, Mr. Williams

clarified that statement, explaining that the only employees eligible for rehire who would receive

priority consideration are those employees that were terminated due to a reduction in workforce.

Def.'s Reply, ECF No. 35, Ex. A, Deposition of Albert Williams, 4-5. Employees, such as

Plaintiff, who voluntarily terminated their position would not receive priority consideration. *Id.*

Considering Mr. William's statements in full, Plaintiff has not presented evidence that he

was entitled to priority consideration in the hiring process. Accordingly, Defendant did not

violate its hiring practices by failing to give Plaintiff priority consideration. Moreover, even if

the Court were to assume that Plaintiff did have priority in the hiring process, that priority would

not necessarily entitle Plaintiff to an interview or a job. Plaintiff presents no evidence that, even

with priority consideration, his level of work experience would entitle him to an interview or job

given the relative qualifications of other, external candidates.

Plaintiff failed to produce evidence showing that Defendant was required to interview or

hire him for the Water Services worker position as part of Defendant's usual hiring process.

Accordingly, Plaintiff cannot use this ground as evidence that Defendant's legitimate, non-

discriminatory reason for not hiring Plaintiff is pretextual.

   **c.**   **Credibility of Defendant's Explanation**

Third, Plaintiff contends that Defendant's legitimate, non-discriminatory reason for his

non-selection is pretextual because it is beyond credence. Pl.'s Opp'n, ECF No. 34, 13-16. An

employee may demonstrate pretext by showing that the employer's stated justification is

"unworthy of credence." *Burdine*, 450 U.S. at 256. When an employer's explanation is unworthy

of credence, "in appropriate circumstances, the tier of fact can reasonably infer from the falsity

of the explanation that the employer is dissembling to cover up a discriminatory purpose."

*Reeves*, 530 U.S. at 147.

Here, Plaintiff presents two reasons why Defendant's legitimate, non-discriminatory reason is unworthy of credence. First, Plaintiff claims that Mr. Brown's justification for ignoring Plaintiff's application makes no business sense. Second, Plaintiff contends that Ms. Richardson's justification for forgetting Plaintiff's application is beyond credence. The Court is persuaded by neither of Plaintiff's arguments.

First, Plaintiff claims that Mr. Brown's justification for ignoring Plaintiff's application makes no business sense. As was previously explained, Mr. Williams sent Plaintiff's application to Mr. Brown approximately two months before Ms. Richardson sent Mr. Brown the list of twelve qualified applicants in October 2015. Mr. Brown did not interview Plaintiff or reject him. Instead, Mr. Brown waited for the list of additional qualified candidates from Ms. Richardson and interviewed nine of those candidates. Pl.'s Opp'n, ECF No. 34, Ex. C, Deposition of Curtis Brown, 19-20. Plaintiff claims that, based on his application, Mr. Brown knew that Plaintiff was qualified, had work experience at DC Water, and was available to start immediately. *Id.* at Ex. A, 63-64. According to Plaintiff, "[i]t makes no practical or business sense for Mr. Brown to delay interviewing Plaintiff … and work understaffed when the information available to him indicated that Plaintiff … would be able to quickly transition into the Sewer Services Worker 06 position." *Id.* at 14.

As an initial matter, Plaintiff ignores Mr. Brown's reasonable explanation for why he did not immediately act on Plaintiff's application. According to Mr. Brown, "it's rare that [the recruiters] just send one candidate." *Id.* at Ex. C, Deposition of Curtis Brown, 17. Mr. Brown did not immediately act on Plaintiff's application because he was expecting to receive additional

qualified candidates from the recruiters. Plaintiff presents no record evidence that would cause the Court to doubt Mr. Brown's reasonable explanation or to view it as pretext for racial discrimination.

Additionally, Plaintiff presents no evidence that Mr. Brown was in any rush to fill the open Water Services worker positions. It is undisputed that there were four open positions for the Water Services worker job. Def.'s Mot., ECF No. 33, Statement of Material Facts As To Which There Is No Genuine Dispute, ¶ 42. From this undisputed fact, Plaintiff asks the court to jump to the conclusion that Mr. Brown unreasonably "chose to work understaffed for an entire season in lieu of interviewing Plaintiff." Pl.'s Opp'n, ECF No. 34, 14. But, Plaintiff cites to no record evidence showing that Defendant was working understaffed or that Defendant required the open Water Services Worker positions to be expeditiously filled. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009) (explaining that under the summary judgment standard, the non-moving party must support allegations with competent evidence). Absent any evidence, the Court will not jump to the conclusion that Defendant chose to work understaffed for a season or that such a decision would be unreasonable.

The D.C. Circuit has "consistently declined to serve as a super-personnel department that reexamines an entity's business decisions." *Holcomb*, 433 F.3d at 897) (internal quotation marks and citation omitted). Absent any record evidence, this Court will not conclude that Mr. Brown made an unreasonable business decision in failing to interview and hire Plaintiff immediately upon receiving his application. This is especially true because Mr. Brown did not interview every qualified candidate that the recruiters sent to him. In October 2015, Ms. Richardson sent Mr. Brown a list of twelve qualified candidates, but Mr. Brown chose to interview only nine of them. Pl.'s Opp'n, ECF No. 32, Ex. A, 60-61, 65. Accordingly, the Court does not find Mr. Brown's

explanation for failing to act immediately on Plaintiff's application to be beyond credence or to be evidence of pretext.

Second, Plaintiff argues that Ms. Richardson's justification for "forgetting" Plaintiff's application is unreasonable. Plaintiff has three reasons for why Ms. Richardson's justification is beyond credence: Defendant's General Manager had recently promised a DC Councilmember to look into Plaintiff's employment prospects; Defendant's candidate tracking system offered a simple way to track and sort candidates; and, another qualified candidate was placed on both the October 2015 and March 2016 qualified applicants lists even though he was not interviewed in October 2015. Pl.'s Opp'n, ECF No. 34, 15. None of these arguments support Plaintiff's allegation that Ms. Richardson's explanation is beyond credence.

First, Plaintiff argues that Ms. Richardson would have remembered Plaintiff's application because Defendant's General Manager, Mr. Hawkins, had recently promised a DC Councilmember to look into Plaintiff's job prospects. *Id.*, at Ex. B, 19-20. But, Plaintiff provides no evidence that Ms. Richardson had any knowledge of Mr. Hawkins's conversation with the DC Councilmember. In fact, Plaintiff provides no evidence that Mr. Hawkins told anyone with responsibility for filling the Water Services worker position about his conversation with the DC Councilmember. And, the Court will not infer such knowledge especially given that Mr. Hawkins's conversation with the DC Councilmember concerned Plaintiff's employment prospects generally and made no mention of the Water Services worker position for which Plaintiff later applied. Absent evidence that Ms. Richardson was aware of Mr. Hawkins's conversation with the DC Councilmember, that conversation provides no evidence that Ms. Richardson should have paid special attention to Plaintiff's application.

Second, Plaintiff claims that Defendant's candidate tracking system offered a simple way to track candidates, so Ms. Richardson should not have forgotten Plaintiff's application. But, Plaintiff misconstrues Ms. Richardson's statements. Ms. Richardson only claimed that she "had no knowledge of Mr. Williams forwarding [Plaintiff's] resume to Mr. Brown." Def.'s Mot., ECF No. 33, Declaration of Giselle Richardson, ¶ 18. Ms. Richardson never stated that she was unaware of or had forgotten about Plaintiff's application. Instead, as was explained above, due to the high volume of applications, Ms. Richardson did not screen and send every qualified candidate to Mr. Brown. Instead, she provided Mr. Brown with a list of some, but not all, of the candidates who met the minimum qualifications for the Water Services worker position. *Id.* at Declaration of Giselle Richardson, ¶¶ 10-12. In short, there is no record evidence to support Plaintiff's contention that Ms. Richardson "forgot" about Plaintiff's application. Accordingly, the potential usefulness of the candidate tracking system is not relevant.

Plaintiff's third argument fails for similar reasons. Plaintiff argues that Ms. Richardson's justification for forgetting Plaintiff's application is not worthy of credence because another qualified candidate was placed on both the October 2015 and the March 2016 qualified candidates lists even though he was not interviewed in October 2015. Pl.'s Opp'n, ECF No. 34, Ex. A, 60-61, 33. But, again, Plaintiff provides no record evidence to support the contention that Ms. Richardson unreasonably "forgot" about Plaintiff's application. As was explained above, not every qualified applicant appeared on either the October 2015 or the March 2016 lists. Instead, because there were numerous qualified candidates, only some of the many qualified candidates were forwarded on to Mr. Brown. Def.'s Mot., ECF No. 33, Declaration of Giselle Richardson, ¶ 10. Because Ms. Richardson did not send all qualified candidates to Mr. Brown, the fact that Plaintiff was not on the October 2015 or the March 2016 lists, even though another qualified

candidate was, is not evidence that Ms. Richardson unreasonably forgot about Plaintiff's application.

Plaintiff fails to present any record evidence that Ms. Richardson's statements concerning his application are unworthy of credence. Instead, Plaintiff makes conclusory allegations that Ms. Richardson unreasonably "forgot" about Plaintiff's application. But, without record evidence, Plaintiff's conclusory allegations are insufficient to show that Defendant's legitimate, non-discriminatory reason for not hiring Plaintiff is pretextual. *See Mulhern v. Gates*, 525 F. Supp. 2d 174, 186 (D.D.C. 2007) (explaining that "self-serving, unsupported statement[s]" and "conclusory sentences" are "insufficient to defeat a motion for summary judgment").

The Court has now addressed each of Plaintiff's arguments for why Defendant's legitimate, non-discriminatory reason is pretext for racial discrimination. But, Plaintiff has not adduced sufficient evidence for a reasonable jury to conclude that Defendant's proffered reason is pretextual or that its real motivation for not hiring Plaintiff was racial discrimination. *Reeves*, 530 U.S. at 142–43, 120 S.Ct. 2097.

In fact, the record evidence casts serious doubt on Plaintiff's claim that race played any role in Defendant's decision not to interview or hire him. For example, both the decision makers who did not select Plaintiff and the applicants who were ultimately hired instead of Plaintiff all share Plaintiff's race. The two people in charge of hiring for the Water Services worker position, Mr. Brown and Ms. Richardson, are both the same race as Plaintiff, African-American. Def.'s Mot., ECF No. 33, Declaration of Curtis Brown, ¶ 1; *Id.* at Declaration of Giselle Richardson, ¶ 1. When those in charge of hiring are of the same race as the plaintiff, "any claim of racial discrimination [is] suspect." *Hardy v. Marriott Corp.*, 670 F. Supp. 385, 392 (D.D.C. 1987. Additionally, the four qualified applicants ultimately hired for the Water Services worker

position are all African-American as well. Def.'s Mot., ECF No. 33, Ex. 4, Deposition of Curtis Brown, 15-16; *Id.* at Declaration of Curtis Brown, ¶ 16. The shared race of Plaintiff and those ultimately hired "cuts strongly against any inference of discrimination." *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005). While these factors are not dispositive, they further weaken Plaintiff's already extremely tenuous claim of racial discrimination.

Moreover, if the above were not enough to entitle Defendant to summary judgment on Plaintiff's claim of racial discrimination, Plaintiff presents no evidence that the relevant decision makers even knew his race when deciding not to interview or hire him. Ms. Richardson stated that "[p]rior to the filing of his Complaint on October 12, 2016, I was not aware of [Plaintiff's] race." Def.'s Mot., ECF No. 33, Declaration of Giselle Richardson, § 19. And, Mr. Brown explained that "[a]t no time, either before or during the hiring process, was I aware of [Plaintiff]s' race." *Id.* at Declaration of Curtis Brown, § 22. Plaintiff provides no evidence that would cause the Court to doubt these statements which were made under oath. "It is axiomatic that a defendant cannot be found to have discriminated against a plaintiff on the basis of race where the defendant had no knowledge of the plaintiff's race." *Washington v. Chao*, 577 F. Supp. 2d 27, 40 (D.D.C. 2008); *see also Jackson v. Dep't of Justice*, 2003 U.S. App. LEXIS 20014, at *2 (D.C. Cir. Sept. 29, 2003) (explaining that the plaintiff could not show discrimination because "[t]he record … contains no evidence that the individuals who made the hiring determinations knew of [the plaintiff's] race"). Plaintiff provides the Court with no argument for how Defendant could have discriminated against Plaintiff on the basis of his race while simultaneously not knowing his race.

In summary as to Plaintiff's racial discrimination claims, Plaintiff failed to present a genuine dispute of material fact concerning whether Defendant improperly considered Plaintiff's

race in not interviewing or hiring him for the Water Services worker position. Defendant argues

that it did not hire Plaintiff because it hired other qualified workers with recent, relevant work

experience, thus presenting a legitimate, non-discriminatory reason for the decision. Plaintiff's

arguments that he was qualified for the job, that Defendant failed to follow its usual hiring

practices, and that Defendant's proffered reason is unworthy of credence do not create an

inference that Defendant's legitimate, non-discriminatory reason was pretextual. And, Plaintiff

failed to cite any other record evidence that would allow a reasonable jury to conclude that

Defendant's true reason for not interviewing or hiring Plaintiff was his race. Accordingly,

Defendant is entitled judgement as a matter of law on Plaintiff's racial discrimination claims.

## IV. RETALIATION CLAIMS

### A. Statutory Background

The Court moves next to Plaintiff's retaliation claims, again, brought under Title VII of

the Civil Rights Act, Section 1981, and the DCHRA. "Title VII prohibits federal agencies

from retaliating against employees for asserting their rights." *Holcomb v. Powell*, 433 F.3d 889,

901 (D.C. Cir. 2006). Specifically, Title VII makes it unlawful for an employer "to discriminate

against [an] employee[] … because he has opposed any practice" made unlawful by Title VII,

such as racial discrimination. 42 U.S.C. § 2000e-3(a). The Supreme Court has recognized that

Section 1981, like Title VII, encompasses retaliation claims. *CBOCS West, Inc. v. Humphries*,

553 U.S. 442, 451 (2008). Similarly, the DCHRA makes it unlawful for an employer to retaliate

against an employee for exercising "any right granted or protected under [the DCHRA]" or

"because [an employee] has opposed any [discriminatory] practice." D.C. Code § 2-1402.61(a)-

(b). These three statutes use the same standard for evaluating retaliation claims, and Defendant

does not treat the statutes separately. Accordingly, the Court will assess Plaintiff's claims under the three statutes together.

Evaluation of retaliation claims follows the same burden-shifting template as discrimination claims. *Holcomb*, 433 F.3d at 901. First, a plaintiff must establish a prima facie case of retaliation. A plaintiff makes a prima facie case of retaliation by showing that "(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal quotation marks and citation omitted) (Title VII); *Fox v. Giaccia*, 424 F. Supp. 2d 1, 9 (D.D.C. 2006) (using the same test for the DCHRA); *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (using the same test for Section 1981).

After a plaintiff has established a prima facie case of retaliation, the defendant must offer a lawful, non-retaliatory explanation for the employment action. Where "the employer has proffered a non-retaliatory explanation for a materially adverse employment action, the sufficiency of the plaintiff's prima facie case is no longer in issue, and 'the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation.'" *McGrath v. Clinton*, 666 F.3d 1377, 1380 n.3 (D.C. Cir. 2012) (quoting *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009)).

In this case, the only adverse action before the Court is Plaintiff's non-selection for the Water Services worker position. *See Supra* Sec. III.A. Defendant has proffered a legitimate, non-retaliatory reason for not selecting Plaintiff—Defendant hired other, qualified applicants with recent, relevant work experience. And, the Court concludes that Plaintiff has failed to rebut this proffered reason or to establish any inference of retaliation.

## B. Analysis

Plaintiff presents two incidents of allegedly protected activity for which he argues he was wrongfully retaliated against. First, Plaintiff claims that Defendant retaliated against him because he complained that he had been unfairly treated and harassed by his supervisor leading to his resignation from DC Water in 2002. Second, Plaintiff claims that Defendant retaliated against him based on his participation in a 2013 class action against DC Water alleging racial discrimination. Defendant, again, asserts that it had a legitimate, non-retaliatory reason for not hiring Plaintiff—Defendant hired other qualified applicants with recent, relevant work experience. Plaintiff fails to present record evidence which would allow a reasonable jury to conclude that Defendant's proffered reason was pretext for retaliation.

First, Plaintiff argues that Defendant did not interview or hire him for the Water Services worker position in retaliation for Plaintiff's complaints about unfair treatment and harassment that occurred while working at DC Water. Pl.'s Opp'n, ECF No. 34, 10. Plaintiff cites many instances in the record where he complained about "unfair treatment" by his supervisor. But, simply complaining about "unfair treatment" is not a protected activity. In order for an activity to be "protected," the employer must be aware that that the employee is complaining of treatment that is unlawful and discriminatory. *See Mazloum v. District of Columbia*, 442 F. Supp. 2d 1, 12 (D.D.C. 2006). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). None of Plaintiff's purported complaints allege racial discrimination in violation of Title VII, Section 1981, or the DCHRA. Accordingly, his complaints do not rise to the level of protected activity.

Prior to his resignation, Plaintiff claims that he complained to the then-Acting Director of the Department of Water Measurement and Billing that his Caucasian supervisor was harassing him and subjecting him to unfair allegations. But, Plaintiff cites to no record evidence that would support this allegation.[4] And, DC Water has no record of any race discrimination complaints made by Plaintiff during his employment. Def.'s Mot., ECF No. 33, Declaration of Roger Brown Jr., ¶ 15. Plaintiff's conclusory statement that he made such a complaint to the then-Acting Director of the Department of Water Measurement and Billing is insufficient to withstand a motion for summary judgment. *See Mulhern v. Gates*, 525 F. Supp. 2d 174, 186 (D.D.C. 2007) (requiring the non-moving party to submit some affirmative evidence in support of his allegations). But, even if the Court were to assume that Plaintiff made such a complaint, this complaint would not rise to the level of protected activity. Plaintiff alleges only that he complained about harassment and unfair treatment, not that he complained about racial discrimination, or some other matter protected by anti-discrimination laws. *See Logan v. Dep't of Veteran Affairs*, 404 F. Supp. 2d 72, 77 (D.D.C. 2005) (explaining that the plaintiff's written complaint was not protected activity because it did "not include a claim of discrimination based upon race").

Plaintiff also claims that he continued complaining about his unfair treatment after he resigned from his job. But, the only evidence of these complaints to which Plaintiff cites are various letters to DC Water employees and DC Councilmembers complaining about unfair treatment and asking for his job back. Pl.'s Opp'n, ECF No. 34, Ex. B, 8-9 ("We had heard that

---

[4] Plaintiff cites to a letter his former attorney wrote to DC Water and to an undated, out-of-context, written statement by Plaintiff. Neither of these documents contain mention of any complaint to any DC Water employee prior to Defendant's resignation. Pl.'s Opp'n, ECF No. 34, Ex. A, 42-43.

[DC Water] wanted to get rid of most of its meter readers; the actions of my supervisors seemed to confirm this rumor."), 13-15 ("I was subjected to discipline and negative performance evaluations based on false and inaccurate information."), 17-22("I am writing again in the hope of receiving your support in my ongoing quest to rescind my job resignation that I submitted due to unjust pressure."), 26-28 ("Claimant resigned because of numerous attacks on his ability."), 29 ("My job performance was unfairly criticized, and I was told that they wanted to get rid of me."), 30-36 ("The meter readers at [DC Water] came under new supervision, and our new supervisors seemed more interested in building a record to get rid of us than to ensure that the meters were read accurately and efficiently."). These communications all complain that Plaintiff was treated unfairly and request that he be given back his job. But, the communications, again, do not rise to the level of protected activity as they to not allege that Plaintiff had been unlawfully discriminated against on the basis of race or any other protected status.

While not cited as support by Plaintiff, Plaintiff's deposition mentions other letters that he claims to have sent to DC Water employees after he resigned. Def.'s Mot., ECF No. 33, Ex.1, Deposition of Brian Watson, 15. These letters are not in the record. When asked if the letters indicated that he felt like he was being discriminated against because of his race, Plaintiff replied, "I don't know if I started off with race because, even though he wasn't African American, I may have put race but I maybe made emphasis to him and his name … I mean, didn't say he's a white man or something like that." *Id*. These statements show that even Plaintiff is not certain whether or not he complained of racial discrimination. Plaintiff's equipoise statement does not create a genuine dispute of material fact as to whether or not Plaintiff complained to Defendant about racial discrimination.

In order to receive protection from retaliation, Plaintiff must have engaged in conduct opposing an employment practice made unlawful by the statute under which he filed his claim of retaliation. *See Broderick*, 437 F.3d at 1232. And, none of Plaintiff's communications, for which he claims he was retaliated against, so much as mention race or discrimination. Because Plaintiff never complained that he was unfairly treated or harassed because of his race or some other protected class, Plaintiff cannot claim protection under the anti-retaliation statutes.

In addition to failing to prove that he engaged in any protected activity through his various complaints, Plaintiff also fails to show a causal connection between his complaints and the alleged retaliatory act. Under Title VII, the causal link between the protected activity and the adverse employment action requires "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). But, under Section 1981 and the DCHRA, the plaintiff need only prove that retaliation was a "motivating factor." *Jones v. D.C. Water & Sewer Auth.*, 2016 U.S. Dis. LEXIS 19455, at *19-20 (D.D.C. Feb. 18, 2016). However, this distinction is irrelevant as Plaintiff fails to meet even the lesser "motivating factor" standard.

Plaintiff presents no evidence that Mr. Brown or Ms. Richardson, the relevant decision makers, had any knowledge of Plaintiff's complaints. Because there is no evidence that the relevant decision makers had knowledge of Plaintiff's complaints, and Plaintiff points to no other evidence which would support an inference of a causal relation, it "simply defies logic to charge [Defendant] with acting in retaliation for an action of which the [relevant decision makers were] not, in fact, made aware." *Howard Univ. v. Green*, 652 A.2d 41, 46 (D.C. 1994).

Accordingly, even if Plaintiff's generalized complaints of unfair treatment and harassment constituted protected activity, which the Court finds that they do not, Plaintiff fails to

establish a causal connection between his complaints and Defendant's decision not to interview or hire him. Accordingly, Plaintiff has not introduced evidence which would allow a reasonable jury to conclude that Defendant's legitimate, non-retaliatory reason was actually pretext for retaliating against Plaintiff due to his various complaints.

Besides the generalized complaints discussed above, Plaintiff asserts another protected activity for which he alleges he was retaliated against—his participation in a 2013 class action lawsuit against DC Water alleging racial discrimination. Pl.'s Opp'n, ECF No. 34, 10. Plaintiff's participation in a lawsuit alleging racial discrimination is a protected activity under the anti-retaliation laws. But, Plaintiff fails to provide evidence to suggest that his participation in the class action played any part in Defendant's decision not to hire him.

Neither of the relevant decision makers in charge of hiring for the Water Services worker position was aware that Plaintiff had participated in the class action against DC Water. Mr. Brown explained that, "[a]t no time, either before or during the hiring process, was I aware … that [Plaintiff] was among the class membership in the … Class Action." Def.'s Mot., ECF No. 33, Declaration of Curtis Brown, ¶ 22. Similarly, Ms. Richardson stated that, "[p]rior to the filing of his Complaint on October 12, 2016, I was not aware that Mr. Watson participated as a class member in the class action lawsuit." *Id.* at Declaration of Giselle Richardson, ¶ 20. Plaintiff provides no evidence that would cause the Court to doubt these two sworn statements. And, if the relevant decision makers were not aware that Plaintiff participated in the class action, they could not have been motivated by Plaintiff's participation in the protected activity when deciding not to interview or hire him. *See Green*, 652 A.2d at 46.

But, even if the relevant decision makers did not have knowledge of Plaintiff's protected activity, the Court can impute a causal connection if there was institutional knowledge and the

adverse personnel action took place shortly after Plaintiff engaged in the protected activity. *Holcomb,* 433 F.3d at 903. Here, the class action in which Plaintiff participated settled in 2013, more than a year before Plaintiff's non-selection. Def.'s Mot., ECF No. 33, Declaration of Jennifer Harper, ¶ 4. While Plaintiff may have received his settlement in 2015, closer to the time of his non-selection, the settlement funds were distributed through a claims administrator in Florida, not by DC Water. *Id.* Declaration of Jennifer Harper, ¶ 8. Accordingly, the temporal proximity between Plaintiff's protected activity and Defendant's adverse employment action is not sufficiently close to infer a causal relationship. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (explaining that the temporal proximity to support an inference of causation must be "very close," meaning less than three or four months).

Regardless, it is not clear that temporal proximity alone could support an inference of causation in this case. When the D.C. Circuit explained that a causal relationship may be inferred when there is institutional knowledge and the employer's adverse action took place shortly after the employee engaged in the protected activity, the court was referring to the requirements for a prima facie showing of retaliation. *Holcomb*, 433 F.3d at 903. The court explicitly declined to address whether proximity alone would suffice once the defendant provided a legitimate, non-retaliatory reason for the adverse action. *Id.* at 903-904.

In this case, the Court is no longer concerned with Plaintiff's prima facie showing of retaliation as Defendant has supplied a legitimate, non-retaliatory reason for the adverse action. And the D.C. Circuit has held that "positive evidence beyond mere proximity is required to defeat the presumption that the [defendant's] proffered explanations are genuine." *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007). Plaintiff has provided no such positive evidence.

Accordingly, Plaintiff has not shown that Defendant's legitimate, non-retaliatory reason for not hiring him was really pretext for retaliation based on Plaintiff's participation in the class action.

In evaluating Plaintiff's retaliation claims, the Court has also considered Plaintiff's arguments as to why Defendant's proffered reason is pretext which were discussed in the section on racial discrimination. The Court is no more persuaded by Plaintiff's arguments for pretext in the retaliation context than it was in the racial discrimination context. For the reasons discussed in the prior section, Plaintiff's arguments that he was qualified for the position, that Defendant failed to follow its own hiring practices, and that Defendant's proffered reason is unworthy of credence fail to show that Defendant's legitimate, non-retaliatory reason for not hiring Plaintiff is pretextual. *See Supra* Sec. III.B.2.

In summary as to Plaintiff's retaliation claims, Defendant has presented a legitimate, non-retaliatory reason for not hiring Plaintiff—Defendant hired other qualified workers with recent, relevant work experience. Plaintiff has failed to create a genuine dispute as to whether Defendant's proffered reason is pretext. Plaintiff's generalized complaints of unfairness, with no mention of discrimination or race, do not constitute protected activity. And, even if they did, Plaintiff has presented no evidence showing that these generalized complaints are causally connected to Defendant's decision not to interview or hire Plaintiff. Additionally, while Plaintiff's participation in a class action alleging racial discrimination constitutes protected activity, Plaintiff has presented no evidence connecting this protected activity to Defendant's decision not to interview or hire him. Accordingly, Plaintiff has not shown that Defendant's legitimate, non-retaliatory reason is pretext or created an inference of retaliation. Defendant is entitled to judgment as a matter of law as to Plaintiff's claims of retaliation.

## V.  CONCLUSION

For the reasons discussed above, the Court shall GRANT Defendant's motion for summary judgment.  Plaintiff has not presented a genuine dispute of material fact as to whether Defendant discriminated against him on account of his race or as to whether Defendant retaliated against him for engaging in protected activity. Accordingly, Defendant is entitled to judgment as a matter of law.  An appropriate Order accompanies this Memorandum Opinion.

___/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge
